# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

―――――――――――

№ 14-CV-0256 (JFB)(AYS)

―――――――――――

EASTERN SAVINGS BANK, FSB,

Plaintiff,

VERSUS

SALVATORE AUFIERO, ET AL.

Defendant.

―――――――――――

**MEMORANDUM AND ORDER**
March 14, 2016

―――――――――――

JOSEPH F. BIANCO, District Judge:

Plaintiff Eastern Savings Bank, FSB ("Eastern Savings Bank" or "plaintiff") brings this diversity action[1] against defendants Salvatore Aufiero, Denise Aufiero a/k/a Denise Auriero, Gladys Sevillon, Keyspan Gas East Corp., Denora Chavez, Oliver Chavez, Elder Posada, Jeanette Posada, and Aufiero Landscaping Design, Inc. pursuant to New York Real Property Actions and Proceedings Law, Section 1301, *et seq.*, to foreclose on a mortgage encumbering the property commonly known as 272 Lawrence Avenue, Lawrence, New York 11559 (the "Subject Property"). Plaintiff moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), requests reformation of the property description in the mortgage executed on May 23, 2008, and moves for default judgment against certain defendants who have not responded to this action (the "Non-Responding Defendants").[2] Defendant Salvatore Aufiero ("defendant" or "Borrower") opposes plaintiff's motion for

―――――――――――

[1] Plaintiff, a federally chartered savings bank, is a citizen of Maryland, the state in which it has its principal place of business. (*See* Docket Entry No. 20 ("Amended Complaint" or "Am. Compl.") ¶ 2); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("[A] national bank. . . is a citizen of the State in which its main office, as set forth in its articles of association, is located."). Defendants Salvatore Aufiero, Denise Aufiero, and Keyspan Gas East Corporation are residents of New York, (Am. Compl. ¶¶ 3-5), and defendants Gladys Sevillon, Denora Chavez, Oliver Chavez, Elder Posada, Jeanette Posada, and Aufiero Landscaping Design, Inc. are tenants at the Subject Property. (*Id.* ¶ 6-11.) This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

[2] These defendants are Gladys Sevillon, Keyspan Gas East Corp., Denora Chavez, Oliver Chavez, Elder Posada, Jeanette Posada, and Aufiero Landscaping Design, Inc.

summary judgment. For the reasons set forth below, the Court grants plaintiff's motion for summary judgment, plaintiff's request for reformation of the property description, and plaintiff's motion for default judgment against the Non-Responding Defendants.

## I. BACKGROUND

### A. Factual Background

The Court takes the following facts from the parties' affidavits and exhibits, and from the plaintiff's Rule 56.1 Statement of Fact.[3] The Court construes the facts in the light most favorable to the defendant, the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Although the Rule 56.1 statement contains specific citations to the record, the Court cites to the statements rather than to the underlying citations. Unless otherwise noted, where a Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any contradictory evidence in the record.

---

[3] The Court notes that defendant failed to submit a Counter-Statement of Material Facts in violation of Local Civil Rule 56.1. Generally, a party's "'failure to respond or contest the facts set forth by the [moving party] in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.'" *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Giliani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 WL 1120602, at *1–2 (E.D.N.Y. Apr. 25, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion, the Court will overlook this defect and, in the instant case, the Court has carefully reviewed the evidence submitted in both parties' moving papers.

Plaintiff brings this action against Salvatore Aufiero, Denise Aufiero, and the Non-Responding Defendants pursuant to New York Real Property Actions and Proceedings Law, Section 1301, *et seq.*, to foreclose upon the Subject Property pursuant to the terms of a Note and Mortgage (collectively, the "Loan") executed on May 23, 2008. The Note was executed by Borrower in favor of Eastern Savings Bank in the principal sum of $325,000.00. (Pl.'s 56.1 ¶ 2.) The Mortgage securing the indebtedness, which was executed by both Borrower and Denise Aufiero, formed a single, first mortgage lien on the Subject Property and was recorded in the Nassau County Clerk's Office on June 18, 2008. (*Id.* ¶¶ 2-4.) Plaintiff is the owner and holder of the Note, Mortgage, and Loan Documents. (*Id.* ¶ 5.)

The Note provides that the Borrower will make monthly principal and interest payments to Eastern Savings Bank on the first day of each month beginning on July 1, 2008. (*Id.* ¶ 6.) Interest on the principal amount of the Note accrued at the initial rate of 10.99% through and including May 31, 2009, and thereafter, the "Step Down" interest rate declined on a yearly basis in accordance with the schedule set forth in the Addendum to Note. (*Id.* ¶ 7.) The Note also provides that, if the Borrower does not pay the full amount of each monthly payment fifteen calendar days after the date it is due, the Borrower will pay a late charge of 5% of the overdue payment of principal and interest to Eastern Savings Bank, and if the Borrower does not pay the full amount of each monthly payment on the date it is due, the Borrower will be in default. (*Id.* ¶¶ 8-9.) The Note states that, if the Borrower is in default, Eastern Savings Bank may send a written notice requiring the overdue amount to be paid by a certain date, and that Eastern Savings Bank may require the full amount of the unpaid principal to be paid

immediately along with the interest. (*Id.* ¶ 10.) The Note also contains a provision requiring the Borrower to pay for costs and expenses associated with enforcing the Note. (*Id.* ¶ 11.) The Mortgage provides that Eastern Savings Bank may require the Borrower to pay the entire unpaid amount if: (a) defendant fails to make a payment when due; (b) Eastern Savings Bank sends to defendant a thirty (30) day notice of default; and (c) defendant fails to correct his default. (*Id.* ¶ 13.)

Plaintiff alleges that defendant and Denise Aufiero breached their obligations under the Loan by failing to make the monthly payment due on October 1, 2008. (*Id.* ¶ 14.) As a result, Eastern Savings Bank commenced a foreclosure action in the Supreme Court of the State of New York County of Nassau on March 19, 2009 [Index No. 005199/2009]. (*Id.*) After entering into a forbearance agreement, under which defendant and Denise Aufiero made all payments, plaintiff voluntarily dismissed that action on July 29, 2010. (*Id.*) Defendant and Denise Aufiero again failed to make monthly payments beginning in November 2012, and, on June 6, 2013 and August 30, 2013, plaintiff sent them Notices of Default with notification that the Loan would be accelerated if the Default was not cured. (*Id.* ¶¶ 15-16.) Plaintiff sent ninety (90) day notices ("1304 notices") to defendant, Denise Aufiero, and the Non-Responding Defendants on June 6, 2013 pursuant to New York State Real Property Actions and Proceedings Law ("RPAPL") § 1304(1). (*Id.* ¶ 17.) Plaintiff also sent a thirty (30) day notice to cure upon defendant, Denise Aufiero, and the Non-Responding Defendants ("30 Day Notices") on August 30, 2013, and notified the New York State Department of Banking pursuant to RPAPL § 1306. (*Id.* ¶¶ 17-18.)

While preparing to commence the foreclosure action, Eastern Savings Bank discovered upon a title search that the Mortgage did not contain the full name of the Subject Property as stated in the deed, in that it failed to include the following in the fourth line of the first paragraph: "Lawrence, Long Island, November 1907, John S. Newman, C.E. & Surveyor, Woodmere, Long Island." (*Id.* ¶ 21.)

B.      Procedural Background

Plaintiff filed its complaint in this action on January 13, 2014, and an amended complaint on February 13, 2014. On March 30, 2015, plaintiff moved for summary judgment. Defendant opposed on May 21, 2015. Plaintiff replied on June 4, 2015. The Court held oral argument on August 7, 2015. The Court has fully considered the submissions of the parties.

II.      STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III.   DISCUSSION

A. Default Judgment

Federal Rule of Civil Procedure 55(a) establishes the two-step process for entry of default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the Clerk of the Court enters default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment. *See* Fed. R. Civ. P. 55(b)(2).

To obtain damages related to a default judgment, "a plaintiff must present admissible evidentiary proof of his alleged damages, unless the claimed amount is liquidated or susceptible to mathematical calculation." *In re Suprema Specialties, Inc.*, 330 B.R. 40, 54-55 (S.D.N.Y. 2005) (citing *SEC v. Mgmt. Dynamics*, 515 F.2d 801, 814 (2d Cir. 1975) ("[U]nless the amount of damages are absolutely certain, the court is required to make an independent determination of the sum to be awarded.")). Rule 55(b)(2) permits a court to conduct a hearing "as it deems necessary and proper" to calculate damages, "vesting considerable discretion in the court to establish the procedures appropriate to the particular case." *Id.* at 55. However, a hearing is not necessary "as long as [the court] ensure[s] that there [is] a basis for the damages specified in a default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

Plaintiff moved for entry of default against the Non-Responding Defendants, which the Clerk of the Court noted on July

30, 2014. The Non-Responding Defendants have not responded or otherwise appeared in this action. Accordingly, the Court grants plaintiff's motion for default judgment against the Non-Responding Defendants.

## B. Reformation

Reformation of a contract is an equitable remedy that "allows courts to align erroneous legal instruments with the executing parties' intent by transposing, rejecting, or supplying terms to correct or clarify the document." *OneWest Bank, N.A. v. Denham*, No. 14-CV-5529 (DRH)(AKT), 2015 WL 5562980, at *6 (E.D.N.Y. Aug. 31, 2015) (internal quotation marks and citations omitted). Mistakes made in the description, quantity, or condition of land may provide a basis for deed reformation. *Hadley v. Clabeau*, 532 N.Y.S.2d 221, 225 (N.Y. Sup. Ct. 1988) ("It is a well-accepted principle of law that an instrument may be reformed for a mutual mistake of fact. The general principle of law has been held to be particularly applicable to the reformation of a deed.") (citation omitted). *See also SDF9 COBK LLC v. AF & NR LLC*, No. 12-CV-3078 (ENV)(RML), 2014 WL 4244296, at *11-12 (E.D.N.Y. Aug. 20, 2014) (adopting Report & Recommendation granting plaintiff's motion to reform the mortgage to correct an erroneous property description arising out of a mutual mistake). Defendant does not contest plaintiff's claim for reformation, and the Court concludes that reformation to add  to the fourth line of the first paragraph, "Lawrence, Long Island, November 1907, John S. Newman, C.E. & Surveyor, Woodmere, Long Island," is warranted.

## C. Summary Judgment

### 1. Mortgage Foreclosure

Under New York law, a mortgage is "'merely security for a debt or other obligation.'" *United States v. Freidus*, 769 F. Supp. 1266, 1276 (S.D.N.Y. 1991) (quoting 77 N.Y. Jur. 2d, Mortgages § 2 at 374); *see also Rivera v. Blum*, 420 N.Y.S.2d 304, 308 (N.Y. Sup. Ct. 1978) (holding that a mortgage is the security for a debt that represents a lien on the mortgaged property). The "'mortgagor is bound by the terms of his contract as made'" and, in the event of a default, cannot be relieved from the default unless waived by the mortgagee, or where there is "'estoppel, or bad faith, fraud, oppressive or unconscionable conduct'" on the part of the mortgagee. *United States v. Freidus*, 769 F. Supp. at 1276 (quoting *Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y. 2d 175, 183, 436 N.E.2d 1265, 451 N.Y.S.2d 663 (N.Y. 1982)).

To establish a *prima facie* case in an action to foreclose upon a mortgage, "the plaintiff must establish the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment." *Campaign v. Barba*, 805 N.Y.S.2d 86 (2d Dep't 2005); *see also United States v. Freidus*, 769 F. Supp. at 1277 (holding that foreclosure actions require "proof of the existence of an obligation secured by a mortgage, and a default on that obligation").

Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has satisfied its *prima facie* entitlement to judgment and has a presumptive right to foreclose. *See Fleet Nat'l Bank v. Olasov*, 793 N.Y.S.2d 52 (2d Dep't 2005) (citing cases). The burden then shifts to the defendant to demonstrate that there is a

triable issue of fact with respect to the merits of any defenses or counterclaims. *Id.*; *see also U.S. Bank Trust Nat'l Ass'n Tr. v. Butti*, 792 N.Y.S.2d 505 (2d Dep't 2005); *Republic Nat'l Bank of N.Y. v. O'Kane*, 764 N.Y.S.2d 635, 635 (2d Dep't 2003).

Plaintiff alleges, and defendant does not dispute, that plaintiff has established a *prima facie* entitlement to judgment pursuant to the terms of the Note and Mortgage for: (a) the entire unpaid principal amount due under the Note, and all accrued and unpaid interest, advances, and late charges which as of December 13, 2013, amounted to $434,479.56; (b) attorneys' fees and other costs and disbursements, payable to Eastern Savings Bank under the terms of the Note and Mortgage, which will accrue until the amount due and payable under the Note and Mortgage is paid in full; and (c) any and all additional fees including, but not limited to, protective advances that are due or may become due and payable as provided under the terms and conditions of the Note and Mortgage.

The defendant argues that there are triable issues of fact with respect to the merits of several defenses.[4] However, the Court finds that defendant's affirmative defenses fail to raise any triable issues of fact, and concludes that Eastern Savings Bank is entitled to summary judgment.

2. Consumer Credit Requirements Under 12 C.F.R. § 535.11

Defendant argues that it would be "unfair and inequitable for plaintiff to be able to proceed or for the Court to aid in the plaintiff's continuance of the foreclosure" because plaintiff's Loan allegedly disregarded the "consumer credit" requirements contained in 12 C.F.R. § 535.11 of the Home Owners' Loan Act ("HOLA").[5] (Def.'s Opp. at 8-9.) Defendant argues that the definition of "consumer credit" required plaintiff to rely substantially on factors other than the Subject Property as the primary security for the Loan, and that because defendant's loan application lists no assets other than his home as collateral, plaintiff disregarded the rule.

However, 12 C.F.R. § 535.11 was not enacted until July 1, 2010, over two years after the Note and Mortgage were effected, and is therefore inapplicable to the Loan. Moreover, the requirements of HOLA are

---

[4] Defendant appears to have abandoned the affirmative defenses raised in his answer (with the exception of the Seventh Affirmative Defense, which reserves the right to assert additional affirmative defenses) by not raising them in his opposition to plaintiff's motion for summary judgment. Instead, defendant argues in favor of what plaintiff asserts are previously unpled affirmative defenses. It is plaintiff's position that these affirmative defenses are waived under Fed. R. Civ. P 8(c)(1) and that plaintiff's Seventh Affirmative Defense should be stricken in violation of the fair notice requirements under the Federal Rules of Civil Procedure. In its discretion, the Court excuses defendant's failure to include the affirmative defenses for which he now argues in his answer because "the purposes of the rule requiring pleading of an affirmative defense—to give notice to the plaintiff and to give her an opportunity to respond—have been met." *Foster v.*

*Lee*, 93 F. Supp. 3d 223, 230 (S.D.N.Y. 2015) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir. 2003)).

[5] "Consumer credit means credit extended to a natural person for personal, family, or household purposes. It includes consumer loans; educational loans; unsecured loans for real property alteration, repair or improvement, or for the equipping of real property; overdraft loans; and credit cards. It also includes loans secured by liens on real estate and chattel liens secured by mobile homes and leases of personal property to consumers that may be considered the functional equivalent of loans on personal security but only if you rely substantially upon other factors, such as the general credit standing of the borrower, guaranties, or security other than the real estate or mobile home, as the primary security for the loan." 12 C.F.R. § 535.11(b).

administered and enforced by the Director of the Office of Thrift Supervision ("OTS"), 12 C.F.R. § 500.1, and not by individuals such as defendant. *See In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 643 (7th Cir. 2007) ("HOLA creates no private right of action to sue to enforce the provisions of the statute or the OTS's regulations."); *Taylor v. Citizens of Fed. Sav. & Loan Ass'n*, 846 F.2d 1320 (11th Cir. 1988) (holding that mortgagor had no private right of action for alleged violations of HOLA).

Even if defendant had standing to enforce 12 C.F.R. § 535.11, and the definition of "consumer credit" applied retroactively, defendant has not shown that the Loan disregarded the requirements of 12 C.F.R. § 535.11 since plaintiff relied on factors other than the Subject Property in issuing the Loan, including Borrower's stated income of $15,000 per month from his landscaping company, three lease agreements showing rental income totaling $4,500.00, and the fact that Borrower was taking out the Loan in order to refinance an existing loan for which he had a strong payment history verified by a credit report run. (*See* Pl.'s Reply, Ex. A ¶¶ 4-6.)

3.  Predatory Loan

Defendant also argues that the Loan was "likely predatory" and that plaintiff's conduct in extending the Loan was in "bad faith." (Def.'s Opp. at 9, 14.) To support his argument that the Loan was predatory, defendant points to testimony given by OTS Director Ellen Seidman before the U.S. House of Representatives Committee on Banking and Financial Services on May 24, 2000, in which Director Seidman emphasized the importance of the prudent underwriting of mortgage loans and urged institutions to "carefully evaluate the capacity of the borrower to make payments on the debt, the level of equity in the property, and the overall credit worthiness of the borrower." 65 FR 17811, Vol. 65, No. 66 (April 5, 2000). Director Seidman's testimony also included a description of common features of a predatory loan.[6] Defendant argues that plaintiff acted in bad faith and issued a Loan that was "likely 'predatory' according to the testimony given by the OTS Director because defendant's note rate was 10.99%, which was six percent above the prime lending rate for March-April 2008," contained a prepayment penalty and a loan "call" provision, the plaintiff did not seek income verification, and there were no guaranties given for the Loan with the sole collateral security being defendant's residential home. (Def.'s Opp. at 11.)

---

[6] In particular, Director Seidman testified as follows: "[a] predatory loan typically combines several of the following features: interest rates significantly higher than justified by the relative risk profile of the borrower; financing of high fees and points and of a single-payment credit life insurance premium, often called 'packing'; a balloon payment; negative amortization; and prepayment penalties. But the presence of one or more of these features does not necessarily make a loan predatory. Whether a loan is predatory depends also on factors related to its marketing, the choices available to the borrower, and whether the borrower has sufficient non-housing assets or income to pay off the loan. Thus, if you couple a loan with one or more of the features listed above with one or more of the following practices, a predatory loan is the likely result: high pressure marketing targeted to vulnerable populations, such as the elderly, low- and moderate-income families, and those with medical care or other debts; steering a borrower who would qualify for a prime loan to a high-cost loan, by taking advantage of the borrower's lack of knowledge or inexperience; excessive refinancing of little or no net benefit to the borrower, often called 'flipping'; underwriting the loan based on the equity in the home without regard to whether the income or other non-housing assets of the borrower are sufficient to pay off the loan; making disclosures in a rushed way so the borrower does not understand the nature of the proposed loan; and refusing to report complete loan payment experience to credit reporting agencies." *Id.*

Defendant relies solely on Congressional testimony, rather than a statute or case law, in arguing that the loan is predatory. In any event, even taking Director Seidman's testimony into account, defendant has not presented sufficient evidence to create a disputed issue of material fact as to whether the loan was "likely predatory." The Note rate of 10.99% and its "step down" feature (decreasing each year until June 1, 2016 when the interest rate became fixed at 9.490% until the maturity of the Loan), does not come close to the 16% per annum maximum rate of interest for loans permitted under New York's civil usury law. *See* N.Y. Gen. Oblig. Law § 5-501(1); N.Y. Banking § 14-a. Moreover, plaintiff argues, and defendant does not dispute, that defendant's credit rating would have made him ineligible for a lower interest rate. (Pl.'s Mem. of Law at 6.) In addition, defendant has presented no evidence that the prepayment premium, the "call" provision, and the fact that the sole collateral security of the Loan was defendant's home were coupled with the practices described by Director Seidman; as discussed, *infra*, plaintiff took into account Borrower's rental and business income, as well as his prior loan history, when issuing the Loan.

Accordingly, the uncontroverted evidence demonstrates that this was not a predatory loan or a loan extended in bad faith.

### 4. Unconscionability and Bad Faith

Defendant also argues that the Loan was unconscionable because defendant (a) lacked meaningful choice in choosing a lender due to his poor credit rating, (b) had a high school education and was not a sophisticated borrower, (c) Eastern Savings Bank did not seek income verification, (d) defendant was not informed about the prepayment penalty or the "call" provision,

(e) defendant was not told the loan relied on defendant's home as the primary collateral security, (f) defendant was not represented by an attorney at the closing, nor told he could have one present, and (g) substantive aspects of the loan included a 10.99% interest rate, substantial penalty for paying the loan within thirty-six months, and the lender's "call" provision available at ten years and annually thereafter. (Def.'s Opp. at 14-15.) Defendant argues that he did not discover the prepayment penalty would cost six months of interest to pay (10.99% of principal of $325,000.00), which was too costly to afford in addition to the cost of refinancing, until he attempted to refinance the loan several months after the May 2008 closing. (Def.'s Opp. at 15.)[7]

The Second Circuit has stated that a contract is considered unconscionable under New York law[8] when "it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable. . . according to its literal terms.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Naval v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (internal quotation marks and citations omitted)).

---

[7] In his opposition, defendant argues that the common law defenses of unconscionability and bad faith are not preempted by federal law. (Def.'s Opp. at 23.) Because plaintiff does not meaningfully dispute the validity of these defenses on the basis of preemption, and the Court finds that there are no triable issues of fact with respect to either defense, the Court need not, and does not, reach the issue of preemption with respect to these affirmative defenses.

[8] Because a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which the court sits, New York's law of unconscionability applies. *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153 (2d Cir. 2013) ("[A] federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits.").

"Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable. . . . The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract[, *per se* ]." *Id.* at 121-22 (internal quotation marks and citations omitted) (alteration in original). Courts examining procedural unconscionability focus on, for example, "(1) the size and commercial setting of the transaction; (2) whether there was a 'lack of meaningful choice' by the party claiming unconscionability; (3) the 'experience and education of the party claiming unconscionability'; and (4) whether there was 'disparity in bargaining power.'" *Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003) (quoting *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828 (N.Y. 1988)).

In this case, defendant is unable to raise a triable issue of fact as to procedural or substantive unconscionability. With respect to procedural unconscionability, defendant argues that he lacked meaningful choice in selecting a lender because he had a poor credit rating, he was an unsophisticated borrower, and he was not represented by counsel at the closing. Defendant's limited choice of lenders due to his poor credit rating is irrelevant for the purposes of deciding procedural unconscionability because it did not restrict his ability to decide whether or not to enter into the contract. Though defendant may have lacked higher education, he has experience as the owner of a business and as the landlord of several lease agreements, as well as prior experience in obtaining the underlying loan he was seeking to refinance. Though defendant was not represented by counsel at the closing, he received and signed a disclosure informing him of his right to representation by counsel during the closing process. (*See* Pl.'s Reply, Ex. A.) Moreover, defendant presents no evidence that deceptive or high-pressured tactics were used; rather, defendant was given a three-day right of rescission, which he chose not to exercise.

With respect to substantive unconscionability, defendant points to the interest rate of 10.99%, a prepayment penalty, the "call" provision, and the fact that the Borrower's home was the sole collateral of the Loan. The interest rate, which declined over time as a "step down" interest rate, is permitted by law and is not unconscionable. The only case defendant cites in support of his argument of unconscionability actually favors plaintiff. In *Emigrant Mortgage Company, Inc. v. Fitzpatrick*, the Appellate Division, Second Department found that the defendant, who had received a loan from plaintiff, failed to raise a triable issue of fact regarding unconscionability of the subject loan. The Second Department overturned the Supreme Court's determination that the plaintiff's possible violations of the restrictions and limitations placed on subprime and high-cost loans by Banking Law § 6-m created a triable issue of fact with respect to unconscionability because the loan, which was executed on April 9, 2008, did not fall within the purview of the law, which applied only to certain loans issued on or after September 1, 2008. *See Emigrant Mortgage Company, Inc. v. Fitzpatrick*, 95 A.D. 3d 1169, 2012 N.Y. Slip Op. 03980 (2d Dep't 2012).

Accordingly, given the uncontroverted facts, the defenses of unconscionability and bad faith cannot survive summary judgment.

### 5. Refusal to Modify or Forbear

Defendant asserts that plaintiff exercised "bad faith" in failing to offer the defendant a loan modification. Specifically, defendant argues that Eastern Savings Bank denied him a modification and he should receive one because Eastern Savings Bank did not verify his income when the Loan was originated in 2008. (Def.'s Opp. at 15-16.) As set forth below, this argument has no merit.

Under New York law, plaintiff is under no obligation to modify the terms of defendant's mortgage. *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 533; *see also Miller v. HSBC Bank U.S.A., N.A.*, No. 13-CV-7500, 2015 WL 585589, at *3 (S.D.N.Y. Feb. 11, 2015) (collecting cases). Although defendant argues that his case is unique due to economic hardship, and that the defendant has a duty to help him, the law is clear that a lender is entitled to enforce an existing contract "regardless of the difficult economic conditions facing" the borrower. *Gaia House Mezz LLC v. State St. Bank & Trust Co.,* 720 F.3d 84, 93 (2d Cir. 2013); *see also Barbara v. MarineMax, Inc.*, No. 12-CV-0368 (ARR)(RER), 2013 WL 4507068, at *19 (E.D.N.Y. Aug. 22, 2013), *aff'd*, 577 F. App'x 49 (2d Cir. 2014) ("[T]he covenant of good faith does not require one party to be an altruist toward the other.").

Additionally, engaging in discussions about possible modifications of a loan agreement or modifying the terms in the past does not constitute a course of dealing requiring the lender to provide an offer on better terms sought by the borrower. *See Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052 (2d Cir. 1992). In *Fasolino*, the Second Circuit rejected plaintiff's argument that the bank's prior approval of plaintiff's letters of credit in overdraft situations resulted in an obligation to approve the plaintiff's applications in the future, noting that such an argument was "unsupported by New York case law, the U.C.C., or common sense." 961 F.2d at 1057.

Thus, because there was no binding loan modification agreement or obligation to provide plaintiff with a modification agreement on his desired terms, defendant's claim of "bad faith" or for breach of duty of good faith and fair dealing based on plaintiff's failure to provide defendant with a loan modification fails as a matter of law.

### 6. Settlement Conference

Lastly, defendant argues that he is entitled to a settlement conference under New York C.P.L.R. § 3408, which states that "the court shall hold a mandatory conference within sixty days after the date when proof of service is filed with the county clerk, or on such adjourned date as has been agreed to by the parties" in any residential foreclosure action involving a home loan. Courts in this Circuit have held that, in this context, Rule 16 provides a sufficient alternative mechanism for facilitating settlement rendering C.P.L.R. § 3408's mandatory settlement conference requirement inapplicable. *See, e.g.*, *Kondaur Capital Corp. v. Cajuste*, 849 F. Supp. 2d 363 (E.D.N.Y. 2012) (finding that C.P.L.R. § 3408 is procedural in nature and Rule 16 provides a sufficient alternative mechanism for facilitating settlement). This Court agrees. In any event, the parties have already engaged in settlement discussions on multiple previous occasions to no avail, and the Court does not believe a further mandated conference would have a meaningful impact on the parties' ability to reach a settlement agreement. Accordingly, the Court finds this argument unpersuasive.

IV.    CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment, plaintiff's request for reformation of the property description, and plaintiff's motion for default judgment against the Non-Responding Defendants.


SO ORDERED.



_____
JOSEPH F. BIANCO
United States District Judge


Dated:  March 14, 2016
        Central Islip, NY

* * *

Plaintiff is represented by Jerold C. Feuerstein, 360 Lexington Avenue, Suite 1200, New York, New York 10017. Defendant is represented by William J. Fielding, 79-37 Myrtle Avenue, Glendale, New York 11385.